**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT JACKSON**

**JULY 1998 SESSION**



FILED

**March 15, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 02C01-9704-CR-00150 |
| | ) | |
| vs. | ) | Shelby County |
| | ) | |
| **TORRANCE R. JOHNSON,** | ) | Hon. Joseph Dailey, Judge |
| | ) | |
| Appellant. | ) | (Felony Murder) |


**FOR THE APPELLANT:**

**A.C. WHARTON, JR.**
District Public Defender

**EDWARD G. THOMPSON** (on appeal)
**RONALD S. JOHNSON** (at trial)
**LOYCE D. LAMBERT** (at trial)
Asst. District Public Defenders
201 Poplar Ave., Ste. 201
Memphis, TN  38103-1947

**FOR THE APPELLEE:**

**JOHN KNOX WALKUP**
Attorney General & Reporter

**PETER M. COUGHLAN**
Asst. Attorney General
425 Fifth Ave. N., 2d Floor
Nashville, TN  37243-0493

**WILLIAM L. GIBBONS**
District Attorney General

**DAVID HENRY**
**TERRELL DAVIS**
Asst. District Attorneys General
201 Poplar Ave., Third Floor
Memphis, TN  38103


**OPINION FILED:_____**

**AFFIRMED AND REMANDED**

**JAMES CURWOOD WITT, JR., JUDGE**

**OPINION**

The defendant, Torrance R. Johnson, stands convicted of felony murder committed in the perpetration of a robbery following a jury trial in the Shelby County Criminal Court. The jury declined to impose the death penalty, and Johnson is presently serving his sentence of life without possibility of parole in the Department of Correction. In this appeal, he raises numerous allegations of error in the proceedings below.

1. Whether the trial court correctly denied the defendant's pretrial motion for access to the police investigative report.

2. Whether the cumulative effect of the identification evidence was unduly suggestive of the defendant as the perpetrator of the crime.

3. Whether the trial court erred in instructing the jury that the law presumes that every witness is sworn to the truth.

4. Whether the court erred in allowing the state to offer evidence of an earlier robbery committed by the defendant as identification proof.

5. Whether the trial court correctly excluded the defendant's alibi evidence.

6. Whether the evidence is sufficient to support the defendant's conviction.

7. Whether the jury's verdict imposing a life sentence without the possibility of parole is inconsistent.[1]

Having reviewed the record, the briefs of the parties and the applicable law, we affirm the judgment of the trial court.

---

[1]Our opinion will address the issues in a different order than presented in the defendant's brief.

On January 26, 1994, at approximately 9:30 p.m., Beverly J. Terrell was shot while engaged in a financial transaction at an automated teller machine (ATM) at a Boatmen's Bank branch in Memphis. At approximately the same time, 15-year-old Laqwanda Lee and her grandmother were turning into the Boatmen's Bank parking lot as a black male wearing a gray or white hooded sweatshirt and a black jacket ran across in front of them. The individual turned his face toward Ms. Lee for a brief period, and she noticed that he had some gold teeth. Upon pulling into the parking lot, Ms. Lee and her grandmother discovered the mortally wounded victim collapsed outside the ATM enclosure.

Julie Caradine, who worked at a Checkers restaurant across the street from Boatmen's Bank, saw an individual in a dark jacket and a light, white or gray hood-like sweater running from the bank about 9:30 p.m. She did not, however, see this person's face.

Following police investigation, the defendant emerged as the primary suspect. According to the testimony of Laqwanda Lee, she identified the defendant with 90 percent certainty in a photographic lineup and with absolute certainty in a physical lineup. Her testimony was corroborated by Detective John Cherry of the San Diego, California Sheriff's Department, who conducted the photographic lineup, Sergeant O.W. Stewart of the Memphis Police Department, who was present at the physical lineup, and Jerri Lee, the witness's grandmother and guardian who was present at the physical lineup.

Additionally, the defendant was implicated in a very similar robbery of

Nedra Smith at the same ATM machine only six days before the victim's murder.[2] According to Ms. Smith's testimony, she identified the defendant in a physical lineup as the man who robbed her. Investigator Alan Pinnow's testimony confirmed Smith's identification of the defendant in a physical lineup.

The state introduced photographs taken by the bank's surveillance equipment during the course of the Smith robbery and the victim's murder. In the photographs, the perpetrator of both crimes is wearing a light colored hooded sweatshirt which is pulled up over the perpetrator's head. The perpetrator is also wearing a dark, leather or leather-type jacket. Although the perpetrator is at an angle away from the camera, the lower part of his face is visible in one of the photographs.

The defendant was interviewed by law enforcement. At first, he claimed he had been working on the nights of the Terrell murder and the Smith robbery. This claim was rebutted by information received from the defendant's employer. The defendant also claimed he had been home and that he had been at a doctor's office being treated for pneumonia. The defendant's mother refused to talk to the authorities. The defendant gave no specific information about the alleged medical treatment so that law enforcement officials could confirm it; however, the defendant offered medical records at trial indicating that he had been treated for pneumonia at Regional Medical Center on January 28, 1994, two days after the victim's murder.

At the close of proof, the defendant was convicted of murder in

---

[2]The defendant was ultimately convicted of that crime, State v. Torrance Johnson, No. 02C01-9610-CR-00350 (Tenn. Crim. App., Jackson, Jan. 30, 1998), perm. app. denied (Tenn. 1998), but evidence of the conviction was not admitted until the sentencing phase of the trial.

perpetration of a robbery.

During the sentencing phase of the trial, the state presented evidence that the defendant had a previous conviction for aggravated robbery. The defendant presented evidence of his upbringing by a single parent, his problems performing in school, his psychological difficulties, his low intelligence, and his history of alcohol and drug use. The defendant claimed that he had never killed anyone in his life, and his credibility was impeached with his previous conviction for criminally negligent homicide and sale of an imitation controlled substance.

The jury returned a sentence of life without possibility of parole.

From the determinations of guilt and sentencing, the defendant appeals.

I

In his first issue, the defendant questions whether the trial court correctly denied his pretrial motion for access to the police investigative report.[3] In his argument, the defendant has failed to make appropriate citations to the record or to authority which supports his very general claim that he should have received these reports because the investigating officer "testified with a selective memory." He has stated no legal basis for his alleged entitlement to the report, and we decline

---

[3]The record does not bear out the defendant's assertion that the motion was overruled. Rather, it reflects that the trial court reserved ruling on the motion prior to trial. After the lead investigator testified on direct examination at trial, the defense moved the court for an order requiring the state to tender the witness's statements pursuant to Rule of Criminal Procedure 26.2. The court denied the motion because the state claimed and the defendant acknowledged that all such information had been tendered in advance. The court allowed the defense additional time to review the previously tendered materials. The defense did not ask the court to revisit its reservation of ruling on the motion to require disclosure of the police report.

5

to speculate in that regard. Additionally, this issue was not raised in the defendant's motion for new trial. Our consideration of this issue has been waived. Tenn. R. Ct. Crim. App. 10(b); Tenn. R. App. P. 3(e), 27.

## II

The defendant challenges the trial court's pre-trial ruling excluding his alleged alibi evidence. He claims, without explanation, that the ruling amounted to an infringement of his state and federal constitutional rights because it deprived him of the opportunity to present a defense.

The state and the defendant agree that the state filed a pre-trial motion seeking disclosure of the defendant's alibi evidence pursuant to Rule of Criminal Procedure 12.1.[4] The defendant acknowledges that he failed to give proper notice of his intent to offer an alibi defense. On the day the trial began, the defense brought the proposed witnesses to the court's attention. The court conducted a hearing, at which Tawana Collins, the defendant's aunt,[5] testified that she and the defendant's mother lived in the same apartment building. Ms. Collins was back and forth between her apartment and the defendant's mother's apartment all day on January 26, 1994. The defendant was sick that day, and Collins' trips to the defendant's mother's apartment were to check on him. The defendant did not work that day because he was sick. Ms. Collins was certain about the date because the defendant had been at her apartment drinking with a friend the previous day,

---

[4]The technical record contains only a general reciprocal discovery motion which makes no specific request for notice of an alibi defense. However, we evaluate the trial court's exclusion of the alibi evidence in light of the defendant's concession that the notice was properly filed.

[5]In his appellate brief, the defendant complains that the trial court excluded his mother's testimony regarding his alleged alibi. However, his mother did not testify at this hearing. We presume he is aggrieved of the trial court's decision to exclude his aunt's testimony.

which was the friend's birthday. Ms. Collins further testified that until recently she had been in daily or almost daily contact with the defendant's mother. However, she did not contact defense counsel until the week before the defendant's trial began.

Telly Albright, the defendant's cousin, testified the defendant had been drinking with a friend of Tawana Collins in the early morning hours of January 26. Mr. Albright remembered the date of January 26 because the defendant "just got out for doing something -- they said he did something else. I had not seen him in a long time." Mr. Albright recalled that the defendant borrowed Ms. Collins' car on January 26 to take Dwayne Wells to the emergency room.

After Mr. Albright began his testimony, the defense announced its intention not to rely on this testimony; however, the defense persisted in its intention to call Ms. Collins. The trial court found that the request for notice of intent to rely on alibi evidence had been filed almost two years earlier. Further, the court found that Ms. Collins had been at the defendant's disposal "virtually on a daily basis" up until approximately one month prior to trial. Accordingly, the court ruled that Ms. Collins' testimony would be excluded.

Tennessee Rule of Criminal Procedure 12.1 provides that upon written demand by the district attorney general, the defendant shall serve within ten days, or at such other time as directed by the court, written notice of his intent to rely on an alibi defense. The notice shall contain specific information regarding the defendant's alleged location at the time of the offense and the names and addresses of the witnesses who the defendant will offer in support of his alibi defense. Tenn. R. Crim. P. 12.1(a). The duty of disclosure is continuing. Tenn. R. Crim. P. 12.1(c). Failure to comply with the rule may result in exclusion of the testimony of an undisclosed witness. Tenn. R. Crim. P. 12.1(d). However, the court

may grant an exception to the rule upon good cause shown. Tenn. R. Crim. P. 12.1(e). On appeal, we will not disturb the trial court's exclusion of alibi evidence based upon failure to comply with the rule absent an abuse of discretion. State v. Shannon Blaylock, No. 03C01-9412-CR-00435, slip op. at 11 (Tenn. Crim. App., Knoxville, Dec. 13, 1995) (Hayes, J. concurring and Turnbull, S.J., dissenting); State v. Terry Lewis Barr, No. 89-267-III, slip op. at 8 (Tenn. Crim. App., Nashville, June 8, 1990), perm. app. denied (Tenn. 1990).

In this case, we find no abuse of discretion. The defendant conceded at the hearing and in this appeal that he failed to comply with the rule. Moreover, he made no showing of good cause to excuse him from the rule's requirements. Although defense counsel did not speak to Ms. Collins until the week before trial, Ms. Collins was in close contact with the defendant's mother until the month before trial. As the trial court correctly observed, "[T]his is not a witness [who] has disappeared and . . . hadn't been located or has been uncooperative or caused problems. This is a witness [who] has been at the defendant's disposal for the past two years."

Moreover, we do not see a constitutional deprivation of due process from the trial court's exclusion of this testimony. When such an allegation is made, this court has considered:

    (1)    the prejudice that resulted to the government from the failure to disclose;

    (2)    the prejudice suffered by the defendant if the sanction of exclusion is employed;

    (3)    the reasons for nondisclosure;

    (4)    the extent that harm from nondisclosure is mitigated by subsequent events;

    (5)    the weight of evidence supporting the defendant's guilt; and

8

(6)     any other factors arising out of the circumstances of the case.
State v. Cory Lamont Gentry, No. 02C01-9708-CC-00304, slip op. at 6 (Tenn. Crim. App., Jackson, Sept. 14, 1998) (citations omitted), applic. for perm. app. filed (Tenn. Nov. 10, 1998).

Although exclusion of alibi witness testimony should be utilized only in extreme cases, Cory Lamont Gentry, slip op. at 7, the case at bar is such an extreme case. We find certain of the factors particularly compelling.

First, the risk of prejudice to the state is high. The state was not given any semblance of proper notice of these witnesses which would allow it the opportunity to investigate the witnesses and the veracity of their claims. "Given the ease with which an alibi can be fabricated, the State's interest in protecting itself against an eleventh-hour defense is both obvious and legitimate." Williams v. Florida, 399 U.S. 78, 81, 90 S. Ct. 1893, 1896 (1970).

With respect to prejudice to the defendant, we find it telling that the testimony of the proffered witnesses was inconsistent. While Ms. Collins said the defendant was very ill and in bed all day on January 26, Mr. Albright recalled the defendant driving someone else to the hospital that day. Thus, the impact of Ms. Collins' testimony, if offered by the defense, would certainly be erased by rebuttal evidence from the state that the defendant was well enough to drive someone else to the hospital that day.

Further, the defendant offered no satisfactory explanation of why he had not disclosed the witnesses earlier. Apparently, Ms. Collins did not come forward until shortly before the trial; however, she admitted she was in daily or almost daily contact with the defendant's mother during the time the defendant was

9

facing capital murder prosecution.

We are also compelled by the strong evidence of the defendant's guilt to find no error in the exclusion of this evidence. The defendant was identified by an eyewitness who saw him fleeing the scene. This witness and a second eyewitness described his clothing, which was the same as that worn by the person who robbed Nedra Smith. Smith, too, identified the defendant. The jury had before it evidence that the defendant was treated for pneumonia two days after the Terrell murder, yet it chose to accredit the state's theory that he killed the victim during the perpetration of a robbery on January 26.

We find no error, constitutional or otherwise, in the exclusion of this testimony.

## III

Next, the defendant claims that the cumulative effect of the identification evidence was unduly suggestive of the defendant as the perpetrator of the crime. He challenges the identification evidence in five respects -- the pre-trial lineup identification of Smith based upon the length of time between the crime and Smith's identification, Smith's subsequent in-court identification, admission of evidence about the composite sketch without requiring the sketch artist to testify,

the bank security officer's testimony about the similarities of the perpetrator of the January 20 and January 26 crimes, and the trial court's failure to give a jury instruction on voice identification.[6]

---

[6]As an aside, we note that the trial court properly instructed the jury relative to eyewitness identification. See State v. Dyle, 899 S.W.2d 607, 612

10

With respect to identification evidence, the state presented the testimony of Nedra Smith that she assisted law enforcement in developing a sketch of the person who robbed her. She also observed two physical lineups. In the first, she did not make an identification. In the second, she identified two individuals and asked that the subjects repeat, "Give me $200, b----, or I'll kill the baby," the phrase the robber said to her. After hearing the subjects' voices, she positively identified the defendant. Officer Pinnow's testimony confirmed Smith's positive identification of the defendant.

Laqwanda Lee testified that she was shown two photo arrays, and she chose the defendant from the second array. She described her level of certainty as 9 out of 10. Subsequently, Lee viewed a physical lineup from which she positively selected the defendant as the person she saw fleeing the scene of the murder. Her testimony was corroborated by that of her grandmother and law enforcement officers who conducted the photographic and physical lineups.

The state also presented the testimony of Maritza Williams, the Director of Security for Boatmen's Bank, that she observed in security photographs taken on the nights of the two crimes that the perpetrator in both cases was wearing a white, hooded-type sweatshirt and a dark leather jacket. She also observed that the physical stature of both perpetrators was similar. Laqwanda Lee testified that the person she saw fleeing the scene was wearing a gray or white hooded

---

(Tenn. 1995).

11

sweatshirt underneath a black jacket. She also saw that the individual was black and had some gold teeth. Nedra Smith testified that the person who robbed her wore a gray and white sweat suit, jeans and a black leather jacket.

**A**

First, the defendant challenges Smith's lineup identification of the defendant based upon the 51-day time lapse between the crime and the identification.

In assessing the reliability of a lineup identification, the period of time between the crime and the identification is only one of the factors to be considered. In Neil v. Biggers, 409 U.S. 188, 93 S. Ct. 375 (1972), the Supreme Court identified five factors for assessing reliability of an identification. They are: (1) the opportunity of the witness to view the perpetrator at the time of the offense, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the perpetrator, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the time between the crime and the identification.

In the case at bar, Smith testified she saw the defendant twice during the perpetration of the robbery -- once as he entered the ATM enclosure and a second time when she turned to tell him she could not withdraw the $200 he demanded. Additionally, the defendant spoke to Smith as he robbed her, and she heard his voice before identifying him from the lineup. Smith testified there was nothing obstructing her view of the defendant. Officer Pinnow testified that Smith

12

was an excellent witness in relating identifying information about the perpetrator. Further, Pinnow testified that a picture of the defendant "jumped out at me" as resembling the composite sketch Smith helped develop. Smith testified she was positive about her identification of the defendant at the lineup. Finally, 51 days elapsed between the crime and the lineup at which Smith identified the defendant. Cf. Forbes v. State, 559 S.W.2d 318, 323 (Tenn. 1977) (98 days). Considering, as we must, all of these factors, we find Smith's identification of the defendant from the lineup highly reliable.

**B**

The defendant also claims Smith's in-court identification was tainted because she had seen two photo arrays, been present at two preliminary matters when the defendant was present, and made a "very tentative" identification of the defendant in a physical lineup.

In the first place, the record does not reflect that Smith was shown two photo arrays.[7] Second, the record reflects that Smith testified at a suppression hearing in April 1995 and another hearing in "December."[8] However, the record does not reflect whether the defendant was present at these hearings. In any event, both of these hearings took place after Smith's positive identification of the defendant in the lineup. Finally, the record does not bear out the defendant's assertion that Smith's identification of the defendant was "very tentative." Smith

---

[7]The defendant apparently confuses Smith with Laqwanda Lee. Lee was shown the two photographic lineups.

[8]The crime occurred in January 1994, and the lineup at which Smith identified the defendant was in March 1994. Thus, any "December" hearing would have been after the lineup.

13

attended a lineup and identified no one as a suspect.[9]  She attended the second lineup and identified two of six individuals and asked to hear their voices.  After the suspects repeated the phrase that the perpetrator said to her during the robbery, Smith positively identified the defendant.

The record is completely devoid of any evidence that Smith saw the defendant or his photograph any time between the crime and her identification of him so as to suggest his identity as the perpetrator.  Assuming she was exposed to him in later court proceedings, she had already positively identified him by this time.

Again applying the Neil v. Biggers factors discussed in section III.A. to the in-court identification following the pre-trial events described above, see State v. Brown, 795 S.W.2d 689, 694 (Tenn. Crim. App. 1990), we find no taint.

**C**

The third sub-issue is the defendant's complaint that the trial court admitted evidence regarding a composite sketch without requiring the sketch artist to testify.  The defendant did not object at the time this evidence was offered, nor did he raise the issue in his motion for new trial.  Thus, the issue is waived.  Tenn. R. App. P. 3(e), 36(a).

In any event, there is no requirement that the sketch artist testify if the victim who assisted the sketch artist identifies the sketch as a fair and accurate representation.  State v. Torrance Johnson, No. 02C01-9610-CR-00350, slip op. at 6 (Tenn. Crim. App., Jackson, Jan. 30, 1998), perm. app. denied (Tenn. 1998).

---

[9]The record does not reflect whether the defendant was a subject in the first lineup at which Smith made no identification.

14

**D**

Next, the defendant challenges the bank security officer's testimony about the similarities of the perpetrator of the January 20 and January 26 crimes. He contends that it was improper for a lay witness to offer her opinion because identity was essentially the ultimate issue in the case.

Maritza Williams, Director of Security for Boatmen's Bank, testified that the ATM machine at which Smith was robbed and Terrell was killed is equipped with a video camera. After the crimes, Williams reviewed the videotapes from both dates. At trial, she identified still photographs made from the videotapes. Over defense objection, the court allowed Williams to testify that she saw certain similarities about the perpetrator in both still photographs. Specifically, in both photographs the perpetrator wore a white hooded-type sweatshirt and a dark leather jacket and was of the same physical size. Williams did <u>not</u> testify that the perpetrator in both photographs was the same person or that the defendant was pictured in either or both photographs.

Tennessee Rule of Evidence 701(a) allows opinion testimony of a lay witness which is "rationally based on the perception of the witness and . . . helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." In this case, the witness testified about her observations in viewing the two photographs taken from her bank's security cameras. Her opinions that the clothing and stature of the individual(s) depicted were similar was rationally based on her perceptions. She did not offer an opinion about the identity of the individual(s). We

15

fail to see that the trial court abused its discretion in admitting this evidence. <u>See,</u> <u>e.g.</u>, <u>State v. McCary</u>, 922 S.W.2d 511, 515 (Tenn. 1996) (admission of evidence is matter for discretion of trial court).

## E

The defendant also complains that the trial court should have given a jury instruction on voice identification. The defendant did not request such an instruction, nor did he raise the issue in his motion for new trial. Thus, the issue is waived. Tenn. R. App. P. 3(e), 36(a); <u>State v. Haynes</u>, 720 S.W.2d 76, 84-85 (Tenn. Crim. App. 1986) (alleged omissions in charge must be called to trial court's attention at trial or be regarded as waived).

## F

Finally, we reach the defendant's claim about the cumulative effect of admission of the evidence discussed above. In each instance, we have found either that the evidence was properly admitted or that the defendant failed to bring the matter to the trial court's attention by objection or issue in the motion for new trial. Thus, there can be no prejudicial cumulative effect of admission of this evidence.

## IV

In a related issue, the defendant claims that the trial court should not have allowed the state to offer as identification evidence proof of a robbery committed by the defendant at the same ATM machine six days before the murder.

Tennessee Rules of Evidence 404(b) provides, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible

16

for other purposes." Such other purposes include "issues such as identity (including motive and common scheme or plan), intent, or rebuttal of accident or mistake...." Tenn. R. Evid. 404(b), Advisory Comm'n Comments. Before such evidence may be admitted, (1) the court must, upon request, hold a hearing outside the presence of the jury; (2) the court must determine that a material issue other than conduct in conformity with a character trait exists, and upon request, must state the material issue, its ruling thereon, and the reasons justifying admission of the evidence; and (3) the court must nevertheless exclude the evidence if the danger of unfair prejudice outweighs its probative value. Tenn. R. Evid. 404(b)(1), (2), (3).

In the case at bar, the defendant made a pretrial motion to exclude evidence that the defendant robbed Nedra Smith at the same ATM only six days before the victim was killed. The trial court conducted a hearing as contemplated by Rule 404(b)(1), at which the defendant claimed that the unfair prejudice which would result from admission of the evidence outweighed its probative value. Specifically, the defendant claimed the evidence was so-called propensity evidence. See State v. Hallock, 875 S.W.2d 285, 290 (Tenn. Crim. App. 1993) (generally, evidence of prior conduct is inadmissible because it is irrelevant and invites the jury

to "infer guilt from propensity"). He also claimed the evidence was irrelevant because Laqwanda Lee made a positive identification of him.

In accepting proof, the court reviewed the transcripts of testimony of Laqwanda Lee and Nedra Smith from a suppression hearing and of Nedra Smith from the trial for the earlier crime. Those documents have not been made a part of the record in this case. The appellant, in this case the defendant, has the duty "to prepare a record which conveys a fair, accurate and complete account of what transpired in the trial court with respect to the issues which form the basis of the

17

appeal." Tenn. R. App. P. 24(b). If the record is incomplete, this court is precluded from considering the merits of the affected issue. State v. Ballard, 855 S.W.2d 557, 560-61 (Tenn. 1993). Thus, we are unable to consider this issue on its merits.

Moreover, we see no merit in the issue to the extent that we can assess it on the basis of the trial testimony of Lee and Smith which, in combination, palpably established identity through a common scheme or plan. Had the trial court been shown less palpable evidence at the 404(b) hearing and had he abused his discretion in allowing the evidence, such error would have been harmless. Tenn. R. App. P. 36(b).

## V

Next, we consider the defendant's challenge to the sufficiency of the convicting evidence. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

Moreover, a criminal offense may be established exclusively by circumstantial evidence. Duchac v. State, 505 S.W.2d 237 (Tenn. 1973); State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995); State v. Lequire, 634 S.W.2d 608 (Tenn. Crim. App. 1987). However, before an accused may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and

18

circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." State v. Crawford, 225 Tenn. 478, 470 S.W.2d 610 (1971); Jones, 901 S.W.2d at 396.   In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." Crawford, 470 S.W.2d at 613; State v. McAfee, 737 S.W.2d 304, 305 (Tenn. Crim. App. 1987).

In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).  Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). On the contrary, this court must afford the State of Tennessee the strongest legitimate

view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. Cabbage, 571 S.W.2d at 835.

The defendant makes a unique and extremely brief argument that the evidence does not support a finding of the defendant's guilt beyond a reasonable doubt based upon erroneous admission of identification evidence, the trial court's failure to instruct the jury "on a vital element of the identification," failure to allow alibi evidence and "other errors cited above."  He makes no specific attack on deficiencies in the state's proof on one or more elements of the crime.

19

Nevertheless, the record overwhelmingly supports the conclusion that the defendant is guilty of the crime of which he was convicted. Laqwanda Lee identified the defendant as the person she saw running from the scene. Nedra Smith identified the defendant as having robbed her at the same location a few days earlier. Security photographs taken during the Smith robbery reveal the perpetrator dressed in a hooded sweatshirt and a dark jacket, just like the perpetrator in the security photograph from the Terrell murder. After Ms. Lee picked the defendant from a lineup, the defendant told Officer Pinnow he knew he was going to be selected.

Additionally, the security photographs from January 26 show the victim entering the ATM enclosure, and a hooded, jacketed man entering several seconds later. From this evidence, the jury could rationally infer that the defendant entered the ATM enclosure with the intent of robbing the victim, and he murdered her in the process of carrying out the robbery.

The evidence sufficiently supports the defendant's guilt beyond a reasonable doubt.

**VI**

The defendant also complains that the trial court erred in instructing the jury that the law presumes that every witness is sworn to tell the truth. Specifically, he alleges that the instruction "told that the State's witnesses, the only witnesses to testify at the trial, were presumed to be telling the truth[.]"[10] Thereby, he claims, he was deprived of the presumption of innocence.

---

[10]The defendant's argument is factually incorrect. The state's witnesses were not the "only" witnesses who testified during the guilt phase of the trial. The defendant presented two witnesses during his case-in-chief.

20

The instruction was given in the context of the jury's duty to reconcile "conflicts in the statements of the different witnesses" and assessing credibility. We have previously upheld the constitutionality of this type of instruction, and the defendant has offered no compelling argument for departure from the established precedent. See, e.g., Lundy v. State, 752 S.W.2d 98, 103-04 (Tenn. Crim. App. 1987).

## VII

Finally, the defendant alleges that the jury's verdict imposing a life sentence without the possibility of parole is inconsistent and requires remand. In all honesty, this court is unable to discern with confidence the rationale of the defendant's argument on this issue. In its entirety, the argument states:

> The transcript of the record reflects that the jury found as an aggravating circumstance justifying the sentence of life without parole that the crime was especially heinous, atrocious or cruel. For purposes of further appellate review and possible post conviction proceedings, the sentence of life without parole should be set aside and the matter of the sentence remanded to the trial court.

In addition, no citation to authority or the record has been included. Therefore, we could treat this issue as waived. Tenn. R. App. P. 27(a)(7), (g), (h); Tenn. R. Ct. Crim. App. 10(b).

We note, however, that according to the transcript of the proceedings below and the written charge contained in the appellate record, the aggravating factor submitted to and found by the jury was that the defendant was previously convicted of one or more violent felonies. See Tenn. Code Ann. § 39-13-204(I)(2) (1997). As we have previously observed, "[w]hen there is a conflict between the court minutes or judgment and the transcript, the transcript controls." See, e.g., State v. Moore, 814 S.W.2d 381, 383 (Tenn. Crim. App. 1991). Notwithstanding, the trial court's minutes memorialize that the jury found the aggravating factor to be

21

that the murder was heinous, atrocious or cruel, even though this factor was not submitted to the jury.  See Tenn. Code Ann. § 39-13-204(I)(5) (1997).  Thus, we believe the defendant's argument may be that the sentence is improper because the court imposed the life sentence without possibility of parole based upon an aggravating factor that was not found by the jury.  While we do not view the sentence as improper because of a clerical error, the court minutes should be corrected.  Tennessee Rule of Criminal Procedure 36 provides for correction of clerical mistakes at any time.  See Tenn. Code Ann. § 39-13-204(I)(5) (1997); accord Moore, 814 S.W.2d at 383.

Accordingly, we order the remand of this matter for correction of the trial court's minutes to reflect that the defendant received his life sentence without the possibility of parole based upon the prior violent felony aggravator.

In sum, we find no error requiring reversal.  The judgment of the trial court is affirmed, and the matter is remanded to the trial court for correction of the court minutes.

_____
JAMES CURWOOD WITT, JR., JUDGE

CONCUR:

_____
JOE G. RILEY, JUDGE

22

_____
ROBERT W. WEDEMEYER, SPECIAL JUDGE